UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:13-cr-00108-JMS-DKL-5 |
| | ) | |
| JORDAN ALLEN, | ) | |
| *Defendant.* | ) | |

## ORDER

Presently pending before the Court is Defendant Jordan Allen's Motion to Suppress. [Dkt. 114.] For the reasons explained, the Court **DENIES** the motion. Three of Mr. Allen's codefendants also have suppression motions pending before the Court. The Court decides those motions in separate Orders also issued on this date.

## I.
### BACKGROUND

The Court draws the factual background from the undisputed evidence submitted by the parties. Mr. Allen adopts the statement of facts found in codefendant Robbyn Kaczmarek's Motion to Suppress. [Dkt. 115 (citing dkt. 113).] The Court therefore begins this background section with the background section found in the Court's Order addressing Ms. Kaczmarek's Motion to Suppress, and supplements it with the additional facts on which Mr. Allen relies.

On October 3, 2011, Indiana State Police Officer Timothy Cummins sought judicial authorization in Morgan County Superior Court to attach a Global Position System Unit ("GPS Unit") to Ms. Kaczmarek's vehicle. [Dkt. 113-1.] In support of this authorization, Officer Cummings submitted an affidavit detailing his knowledge regarding Ms. Kaczmarek's activities. [*Id.*] In pertinent part, the affidavit stated:

During the last month, I have been involved in a marijuana indoor grow investigation involving several grow locations believed to be in Monroe County and Southern Morgan County. I received information from an unidentified informant who is leaving tips that a female named Robbyn L. Kaczmarek . . . is currently involved in [a] marijuana grow operation. The informant provided detailed information and said Kaczmarek was the caretaker of multiple grow houses. A copy of a grow calendar from Kaczmarek was forward[ed] to our office. The informant also advised [that] Kaczmarek's Mercedes was going to be repossessed. Further investigation determined it had been repossessed. The informant advised that Kaczmarek was residing with her 83 year old grandmother at 801 Lafayette Ave. in Oolitic, IN, and that she just bought a Tan Mercury Mountaineer. The informant added that she would leave the residence at around 9 AM to go to work and travel to various grow houses and return to the residence after 9 PM. Kaczmarek was observed leaving and returning on several occasions as the informant had previously advised. I located the Tan Mercury Mountaineer . . . parked outside her grandmother['s] residence located on 8th street at Lafayette Ave. in Oolitic, [IN] on September 28, 2011 at 11 PM. Attempts have been made to follow her but have been unsuccessful.

I am requesting permission to install a GPS to the vehicle described as a Tan Mercury Mountaineer . . . . The vehicle has been parked on a public street at the residence of 801 Lafayette Ave., Oolitic, IN. The installation and monitoring of this GPS will allow us to track Robbyn Kaczmarek['s] movements and hopefully assist us in locating grow house locations.

[Dkt. 113-1 at 1.]

Based on this affidavit, Morgan County Superior Court Judge Craney signed an Order authorizing law enforcement to install a GPS Unit on Ms. Kaczmarek's vehicle for seven days ("State GPS Authorization"). [Dkt. 113-2 at 1-2.] On October 11, 2011, Judge Craney authorized use of the GPS Unit for another seven days. [Dkt. 113-3 at 1-2.] The State GPS Authorization did not purport to be a search warrant, nor did Judge Craney making a finding of probable cause in support of its issuance. [*See* dkt. 113-2 at 1-2.] The parties do not dispute that the law enforcement's use of the GPS Unit revealed several houses and individuals visited by Ms. Kaczmarek, which in turn supported search warrant applications for several houses and the seizing of evidence from those houses. [Dkts. 113 at 3; 121 at 3.]

On October 25, 2011, Drug Enforcement Administration Special Agent Michael Cline signed a sworn affidavit in support of federal law enforcement's request pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to install another GPS Unit on Ms. Kaczmarek's vehicle. [*See* dkt. 115-1.] Special Agent Cline attested that there is "probable cause to believe that Robbyn Kaczmarek, and others unknown, are committing and will continue to commit violation of [21 U.S.C. §§ 841(a)(1) & 846]" and that "monitoring of the [GPS Unit] will lead to evidence of the aforementioned offenses as well as to the identification of individuals who are engaged in the commission of these offenses." [Dkt. 115-1 at 6.] In support of these conclusions, Special Agent Cline relied on the following facts:

- "[T]he Indiana State Police received information from an unidentified informant who is leaving tips that a female named Robbyn L. Kaczmarek . . . is currently involved in a marijuana grow operation . . . and stated that [she] was the caretaker of multiple grow houses." Special Agent Cline then reiterated all of the information in Officer Cummings' Affidavit.

- "Members of the Indiana State Police received authorization to install and monitor a [GPS Unit] from Morgan County Superior Court 3. On October 5, 2011, a [GPS Unit] was installed on the Target Vehicle."

- "Monitoring of the [GPS Unit] . . . reveals that the Target Vehicle has traveled to numerous locations in the Bloomington and Bedford areas. On October 5, 2011, the Target Vehicle went to a remote residence . . . . Later the Target Vehicle travelled and spent over 30 minutes at Worms Way . . . . In a[] State Police Detective's years of conducting indoor marijuana grow investigations[,] Worm's Way is a store used by marijuana growers for the purpose of purchasing grow equipment and supplies. After visiting Worms Way, the Target Vehicle traveled to other addresses and then returned to the [remote residence]."

[*Id.* at 6-7.]

United States Magistrate Judge Foster granted federal law enforcement authorization to install and use another GPS Unit on Ms. Kaczmarek's vehicle ("Federal GPS Authorization"). [*Id.* at 10-12.] Judge Foster found that "there [was] probable cause to believe that . . . [the Target Vehicle] is being used in furtherance of the crime of conspiracy to distribute marijuana, [and] . . .

that monitoring of [the GPS Unit] on the Target Vehicle will uncover evidence of that crime." [*Id.* at 10.] Use of the GPS Unit was authorized for a period of forty-five days. [*Id.* at 11.] Judge Foster further ordered that "within ten (10) days after the use of the mobile tracking device has ended, the Agent executing this Order must return to this Court the exact date and time the mobile tracking device was installed and the period during which it was used."[1] [*Id.* at 11-12.]

## II.
### DISCUSSION

Mr. Allen seeks suppression of all evidence directly or indirectly derived from both state and federal law enforcement's use of the two GPS Units on Ms. Kaczmarek's vehicle. [Dkt. 115 at 5.] Suppression is warranted, says Mr. Allen, because neither Officer Cummings' affidavit nor Special Agent Cline's affidavit were sufficient to establish the probable cause necessary to issue the State GPS Authorization or the Federal GPS Authorization. [*Id.* at 5-8.]

The Government first argues that Mr. Allen has no standing to challenge the legality of the GPS tracking of Ms. Kaczmarek's vehicle.[2] [Dkt. 121 at 4-6.] Second, while not explicitly conceding that Office Cummings' affidavit or Special Agent Cline's affidavit was insufficient to support probable cause, the Government does not defend them as sufficient. [*Id.* at 6.] Instead, the Government contends that suppression is unwarranted because law enforcement relied in good faith on the State GPS Authorization and Federal GPS Authorization in using the GPS Unit. [*Id.*] Mr. Allen resists both of the Government's positions. [Dkts. 115 at 5, 8; 126 at 1-6.]

---

[1] Mr. Allen sets forth several other facts in the factual background section of his Motion to Suppress, but does not support them with citation to evidence. [*See* dkt. 115 at 4-5.] The Court will therefore not set them out as facts here and will address Mr. Allen's reliance on those allegations as necessary below.

[2] The Government filed a joint response brief to Ms. Kaczmarek's and Mr. Allen's separate Motions to Suppress. [*See* dkt. 121.] The Court therefore addresses the Government's arguments relevant to each defendant separately in each Order issued on this day.

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Following law enforcement's use of the GPS Unit on Ms. Kaczmarek's vehicle, the Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a [Fourth Amendment] 'search.'" *United States v. Jones*, 132 S. Ct. 945, 949 (2012). The Government recognizes this and therefore does not dispute that the use of the GPS Unit on Ms. Kaczmarek's vehicle was a Fourth Amendment search. [Dkt. 121 at 7.] Because the search occurred without a warrant, it violated Ms. Kaczmarek's Fourth Amendment rights.[3] Whether Mr. Allen has standing to challenge this violation, however, is a separate question. The Court begins with this question before turning next to whether, even if Mr. Allen does have standing, the evidence at issue should be suppressed.

### A. Mr. Allen Does Not Have Standing to Challenge the Violation of Ms. Kaczmarek's Fourth Amendment Rights

The Government contends that Mr. Allen does not have standing to challenge the search of Ms. Kaczmarek's vehicle because: (1) he did not submit evidence tending to prove that he had a legitimate expectation of privacy in the movements of Ms. Kaczmarek's vehicle; and (2) even if he had submitted evidence supporting his allegations "that he was a frequent passenger in the

---

[3] The Court notes that the parties did not pursue the avenue left open in *Jones*—that, "even if the attachment and use of [a GPS] device [is] a search, it [is] reasonable—and thus lawful—under the Fourth Amendment because 'officers had reasonable suspicion [or] probable cause, to believe that [the defendant] was [involved in criminal activity]." *Jones*, 132 S. Ct. at 954. The Government recognizes that this argument was available but declined to pursue it. [*See* dkt. 121 at 10 n.3.] The Supreme Court did not resolve this question in *Jones* because it was not argued before either the district court or the D.C. Circuit. The Court follows suit. Because the Government did not pursue this argument, the Court will not consider it. *See Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013).

vehicle upon which the GPS [Unit] was attached," this does not establish that he had a reasonable expectation of privacy in the movements of Ms. Kaczmarek's vehicle. [Dkt. 121 at 5.] As to the latter argument, Mr. Allen contends that he did have a legitimate expectation of privacy "that was violated by the GPS tracking of [Ms.] Kaczmarek's vehicle." [Dkt. 126 at 5.] Specifically, he contends that the "expectation of privacy was not in the physical space of the vehicle but rather in the information obtained by the government's intrusion. The constant electronic location monitoring of [Mr.] Allen's romantic partner was an intrusion into [Mr.] Allen's own reasonable expectation of privacy." [*Id.*] Regarding the lack of evidence, Mr. Allen asserts that "[t]he facts alleged . . . were confirmed by [Mr.] Allen to counsel. Should the court so require, counsel will submit an affidavit to establish those facts." [*Id.*]

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993). A defendant must show that his own Fourth Amendment rights were violated because "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)) (quotation marks omitted). Whether a defendant has made this showing is often discussed in terms of whether a defendant has "standing" to challenge a particular search or seizure.[4] To establish standing, "the defendant must show that he had both a subjective and objective expectation of privacy in the item or loca-

---

[4] Although "the Supreme Court rejected the use of traditional standing doctrines in assessing the scope of Fourth Amendment rights," the Seventh Circuit has "continued to use the word 'standing' in the context of Fourth Amendment rights as shorthand to refer to a defendant's ability to challenge a search or seizure based on a reasonable expectation of privacy in the property." *United States v. Crowder*, 588 F.3d 929, 934 n.5 (7th Cir. 2009) (citations omitted). The Court will similarly use "standing" as shorthand in this Order.

tion searched." *Crowder*, 588 F.3d at 934; *see also United States v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007) ("The burden is on the defendant to establish that he has a protected Fourth Amendment interest in the [vehicle searched].").

Mr. Allen has failed to carry his burden of establishing that he has standing to challenge the use of the GPS Unit on Ms. Kaczmarek's vehicle for both of the reasons urged by the Government. First, Mr. Allen's failure to produce any evidence supporting his position that he has an expectation of privacy as a passenger in Ms. Kaczmarek's vehicle precludes him from carrying his burden. *See United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994) ("[The defendant] lacks standing to challenge the seizure of the marijuana because he failed to submit evidence such as testimony or affidavits that he had a legitimate expectation of privacy in the area searched (trailer) or the item seized (marijuana)."); *see also United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1999) (noting that the driver of a vehicle he does not own "may still possess standing to challenge a search of the vehicle, but *only if the driver presents evidence* that he has a legitimate expectation of privacy in the area searched") (emphasis added) (citation omitted). Mr. Allen asserts that, "[s]hould the court so require, [he] will submit an affidavit to establish [the necessary] facts." [Dkt. 126 at 5.] But the time to submit evidence was when he filed his Motion to Suppress. It is Mr. Allen's burden to prove Fourth Amendment standing, *see Figueroa-Espana*, 511 F.3d at 704; *Crowder*, 588 F.3d at 934, and it is not the Court's role to request parties to submit evidence in support of their claims.

Second, even if Mr. Allen had presented evidence in support of standing, he cites no authority—and the Court has found none—supporting his position that he "had a legitimate expectation of privacy . . . in the information obtained by the government's [GPS tracking of Ms. Kaczmarek's vehicle.]" [Dkt. 126 at 5.] To demonstrate his expectation of privacy, Mr. Allen al-

leges, among other things, that he was "a frequent passenger in [Ms.] Kaczmarek's vehicle." [Dkt. 115 at 4.] But it is well-established that individuals without an ownership interest in a vehicle, without some additional evidence establishing an expectation of privacy, do not have a reasonable expectation of privacy while mere passengers in that vehicle. *See United States v. Smith*, 697 F.3d 625, 630 (7th Cir. 2012) (holding that a defendant's Fourth Amendment rights were not violated because he "was a mere passenger in the car and there is absolutely no evidence indicating that he had any ownership interest in the car. And there is no other basis to conclude that he had a reasonable expectation of privacy in the car"); *United States v. Watson*, 558 F.3d 702, 705 (7th Cir. 2009) (stating that the defendant could not challenge the search of a vehicle because "[h]e was just a passenger; he claims neither a property nor a possessory interest in the car, so even an illegal search of it would not have infringed *his* Fourth Amendment rights") (emphasis in original); *United States v. Walker*, 237 F.3d 845, 849 (7th Cir. 2001) (stating that the Supreme Court in *Rakas* "held that the passengers [of the searched vehicle] could not challenge the legality of the search because they did not have a 'legitimate expectation of privacy' in the car as they 'asserted neither a property nor a possessory interest in the automobile'") (quoting *Rakas*, 439 U.S. at 148).

If passengers without a possessory interest in the vehicle have no expectation of privacy in the vehicle's contents, there is no reason to think that they have an expectation of privacy in the vehicle's movements. Indeed, the use of a GPS Unit on a vehicle is a Fourth Amendment search because "[t]he Government physically occupied private property for the purpose of obtaining information," *Jones*, 132 S. Ct. at 949, not because the Government is aware of the vehicle's movements. Because law enforcement's physical intrusion was on Ms. Kaczmarek's private property (her vehicle), and Mr. Allen "claims neither a property nor a possessory interest in

the [vehicle], . . . an illegal search of [Ms. Kaczmarek's vehicle] would not have infringed *his* Fourth Amendment rights." *Watson*, 558 F.3d at 705.[5]

Accordingly, for either of the two foregoing reasons, Mr. Allen does not have standing to challenge law enforcement's use of the GPS Units to track Ms. Kaczmarek's vehicle.

### B.    The Exclusionary Rule is Inapplicable[6]

As stated above, it is undisputed that law enforcement's use of the GPS Unit on Ms. Kaczmarek's vehicle constituted a Fourth Amendment search. *See Jones*, 132 S. Ct. at 949. Even if Mr. Allen had standing to challenge this search, it is well-established that a violation of one's Fourth Amendment rights does not automatically result in the suppression of the evidence discovered as a result of the violation. *See Herring v. United States*, 555 U.S. 135, 140 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."); *United States v. Leon*, 468 U.S. 897, 905-06 (1984) (rejecting the contention that "the exclusionary rule is a necessary corollary of the Fourth Amendment"). One basis to decline suppression of evidence obtained in violation of the Fourth Amendment is the application of the good-faith exception, and this is the basis on which the Government relies.

---

[5] Mr. Allen also argues that "[t]his is not an instance of vicarious assertion of rights. The privacy rights of two people engaged in a romantic relationship are by definition intertwined and interdependent." [Dkt. 126 at 6.] Again, Mr. Allen cites no authority in support of this proposition. This is perhaps because his argument runs directly counter to the fact that "[t]he Supreme Court has consistently held that 'Fourth Amendment right are personal rights.'" *Carlisle*, 614 F.3d at 756 (quoting *Rakas*, 439 U.S. at 134). Whatever the reason, without authority supporting his position that the Fourth Amendment standing inquiry is altered by the fact that he was in a romantic relationship with the individual whose car law enforcement attached the GPS device, the Court will follow the analysis set forth by the Supreme Court.

[6] As stated above, the Government filed a joint response brief to Ms. Kaczmarek's and Mr. Allen's Motions, [dkt. 115], and Mr. Allen expressly adopted Ms. Kaczmarek's arguments with respect to the good-faith exception in lieu of articulating his own, [dkt. 126]. However, the Court concludes each defendant's motion to suppress is best resolved separately. While there is significant overlap in the Court's analysis, individual resolution is appropriate. Therefore, the Court's analysis with respect to the application good-faith exception and the exclusionary rule is substantially similar for Ms. Kaczmarek's and Mr. Allen's motions.

The good-faith exception provides that evidence obtained as a result of a Fourth Amendment violation should not be suppressed if law enforcement had a "reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *Leon*, 468 U.S. at 909. Exclusion of such evidence is unwarranted because the exclusionary "rule's sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011); *see United States v. Brown*, --- F.3d ----, 2014 WL 821278, at *1 (7th Cir. 2014) ("The exclusionary rule is designed to deter violations of the fourth amendment."). Therefore, "[w]here the official action was pursued in complete good faith . . . the deterrence rationale loses much of its force." *Leon*, 468 U.S. at 919.

The Government argues that suppression is unwarranted for either of two reasons: (1) the *Davis* good-faith exception applies, [Dkt. 121 at 9-10 n.2]; and (2) law enforcement relied in good faith on judicial authorization for their actions, [*id.* at 7-11]. Mr. Allen disputes whether either good-faith exception applies. The Court addresses the parties' arguments regarding each of the two good-faith exceptions in turn.

### 1. The Davis *Good-Faith Exception Applies*

The Government contends that at the time the GPS Unit was installed on Ms. Kaczmarek's vehicle "binding appellate precedent"—specifically, *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011), *vacated and remanded by Cuevas-Perez v. United States*, 132 S. Ct. 1534 (2012), and *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007)—"permitted the attachment and use of the GPS tracker on [Ms.] Kaczmarek's vehicle without recourse to a warrant on a showing of probable cause. Therefore, the GPS [Unit] at issue in this case also should fall . . . within the so-called *Davis* good-faith exception." [Dkt. 121 at 9-10 n.2.] Mr. Allen does not dispute that at the time relevant to this case "no binding case law in this Circuit recognized that

the attachment and use of a GPS tracker constituted a search under the Fourth Amendment." [Dkt. 122 at 8.] Instead, she points the Court to *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), to argue that it would be unfair "to assert that the officers had 'no inkling'" that the use of the GPS Unit may constitute a Fourth Amendment search. [Dkt. 122 at 8.] After *Maynard*, says Mr. Allen, "law enforcement and prosecutors were on notice that warrantless use of GPS tracking devices was not the unanimous law of the land and they should proceed with caution." [*Id.*]

The Supreme Court held in *Davis* that the good-faith exception applies to "searches conducted in objectively reasonable reliance on binding appellate precedent." *Davis*, 131 S. Ct. at 2426. The Supreme Court explained its conclusion as follows: "About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." *Id.* at 2429 (emphasis in original) (citations and quotation marks omitted).

The Court's analysis of whether the good-faith exception applies must begin with the Court's recent decision in a similar case: *United States v. Taylor*, --- F.Supp.2d ----, 2013 WL 5817246 (S.D. Ind. 2013). As in this case, the Court had to decide in *Taylor* whether the *Davis* good-faith exception applied to law enforcement's warrantless attachment and use of a GPS device to track the defendant Mr. Taylor's car. More specifically, the Court had to determine whether *Garcia* and *Cuevas-Perez*—the "binding appellate precedent" referenced in *Davis*, 131 S. Ct. at 2429—permitted law enforcement to attach and use the GPS device in the manner it did.

Defendant Mr. Taylor argued that his case was different than *Garcia* and *Cuevas-Perez* in three important respects, which precluded law enforcement from relying on those cases to attach the GPS device to his vehicle and track his movements in the manner they did.  The Court reasoned as follows:

> Mr. Taylor points to three differences between the instant case and *Garcia* and *Cuevas-Perez*: (1) law enforcement here sought to use the GPS Unit for up to sixty days; (2) law enforcement sought to attach the GPS device "while the vehicle was either in a public place or upon private property where members of the general public would have access to such a vehicle,"; and (3) law enforcement sought permission to utilize Mr. Taylor's vehicle's battery to power the GPS Unit.

> The Court agrees with Mr. Taylor that the three differences between this case and the then-binding Seventh Circuit precedent, taken together, preclude the application of the *Davis* good-faith exception in this case.  Simply put, law enforcement could not have objectively relied on *Garcia* and *Cuevas-Perez* when the cases do not explicitly, or for that matter implicitly, authorize the specific actions taken here, especially when both cases raise concerns about the constitutionality of the extent of law enforcement's actions.  First, contrary to law enforcement's desire to utilize Mr. Taylor's vehicle's battery to power the GPS Unit, the Seventh Circuit in *Garcia* intimated that the use of a GPS device that draws power from the vehicle's battery could constitute a seizure under the Fourth Amendment.  *See Garcia*, 474 F.3d at 996.  Second, contrary to law enforcement's wish to attach the GPS Unit while Mr. Taylor's vehicle was on public or private property that the public could access, the Seventh Circuit in both *Cuevas-Perez* and *Garcia* specifically highlighted the fact that the GPS device in each of those cases was installed on the vehicles when they were parked in a public area.  *See Cuevas-Perez*, 640 F.3d at 272; *Garcia*, 474 F.3d at 995.

> Third and perhaps most importantly, contrary to law enforcement's desire here to utilize the GPS Unit continuously for sixty days, the Seventh Circuit in *Cuevas-Perez* specifically declined to decide whether such lengthy surveillance constituted a Fourth Amendment search.

*Taylor*, 2013 WL 5817246, at *6-7 (citations omitted).

The Court therefore rejected the Government's position in *Taylor* that *Garcia* and *Cuevas-Perez* held that "the warrantless placement and subsequent monitoring of a GPS tracking unit on a defendant's vehicle [does] not violate the defendant's Fourth Amendment rights."  *Id.* at *7.  Instead, the Court concluded that "then-binding Seventh Circuit precedent was much more

nuanced, and the Government did not attempt to 'scrupulously adhere[]' to it when utilizing the GPS Unit to track Mr. Taylor. . . . Therefore, the three difficulties identified by Mr. Taylor, taken together, preclude the application of the *Davis* good-faith exception." *Id.* at *7 (quoting *Davis*, 131 S. Ct. at 2434).

The Government understandably did not rehash at length in this case the argument this Court had recently rejected in *Taylor.* Following the parties' briefing of this motion, however, the Seventh Circuit cast doubt on this Court's reasoning in *Taylor.* The Seventh Circuit described *Garcia* and *Cuevas-Perez* as establishing the "binding appellate precedent" for the purpose of the *Davis* good-faith exception. *Brown*, 2014 WL 821278, at *1. Those cases, said the Seventh Circuit, "had established that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment. It appears to follow that the exclusionary rule does not apply to the acquisition of GPS location data, with in the Seventh Circuit, before *Jones*." *Id.*; *see also id.* at *2 ("We concluded in *Garcia* and *Cuevas-Perez* that . . . tracking a car's location by GPS is not a search no matter how long tracking lasts."). Based on the Seventh Circuit's broader characterization of the holdings in *Garcia* and *Cuevas-Perez* than this Court's in *Taylor*, the Court can no longer adhere to its narrower reading of those cases. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted).

Mr. Allen challenges only whether probable cause existed such that law enforcement could use the GPS Unit to track Ms. Kaczmarek's vehicle's movement. [*See* dkt. 113 at 13.] Although *Jones* has since instructed that this is a Fourth Amendment search, law enforcement

utilized the GPS Unit in this case before *Jones* and after *Garcia* and *Cuevas-Perez*. Thus law enforcement could have relied in good faith on the latter two cases—which at that time were "binding appellate precedent"—to conclude "that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment." *Brown*, 2014 WL 821278, at *1. The Seventh Circuit made clear that when this is the case—that the GPS Unit in question was used after *Garcia* but before *Jones*—"the exclusionary rule does not apply . . . in the Seventh Circuit."[7] *Id.* Accordingly, for this reason alone, the exclusionary rule does not apply and Mr. Allen's Motion to Suppress must be denied.

> 2. *Law Enforcement Reasonably Relied on Judicial Authorization to use the GPS Unit*

The Government also pursues an alternative basis for the Court to reject application of the exclusionary rule in this case—namely, that the exclusion of evidence is unwarranted when law enforcement relies on judicial authorization for their actions. [Dkt. 121 at 7-9.] Here, says the Government, Officer Cummings sought and received judicial authorization for the installation and use of the GPS Unit on Ms. Kaczmarek's vehicle, leading law enforcement to reasonably believe such actions were lawful under the Fourth Amendment. [*Id.*] If this belief is reasonable, continues the Government, suppression of the evidence could not deter any wrongful police behavior. [*Id.*] In short, this is the line of reasoning the Court adopted in its recent decision in *Taylor*, and the Government argues that it is equally applicable to this case. [*Id.*]

---

[7] *Brown* makes clear that Mr. Allen's reliance on the D.C. Circuit's decision in *Maynard* to preclude application of the *Davis* good-faith exception, [dkt. 122 at 8], is misplaced. While "[t]here is legitimate debate about whether precedent from Circuit A could be deemed 'binding' (for the purpose of *Davis*) when the search occurs in Circuit B, where the issue remains unresolved," the search in this case occurred in the Seventh Circuit at a time when the issue was resolved—"binding appellate precedent" held "that tracking a car's location by GPS is not a search." *Brown*, 2014 WL 821278, at *2-3. Thus Mr. Allen cannot rely on D.C. Circuit precedent to argue that law enforcement in the Seventh Circuit could not rely in good faith on Seventh Circuit precedent.

Mr. Allen does not address *Taylor*. Nor does he explain why the reasoning this Court followed in *Taylor* is inapplicable here. He instead contends that Officer Cummings' affidavit fell so short of establishing probable cause that he could not have reasonably relied on the State GPS Authorization to believe that the use of the GPS Unit did not violate his Fourth Amendment rights. [Dkt. 122 at 2-8.] Specifically, he discusses several alleged deficiencies in Officer Cummings' affidavit, and based on these alleged deficiencies, argues that Officer Cummings "knew, or should have known, that reliance on the search warrant was ill-advised." [*Id.* at 7.] In conclusion, Mr. Allen argues the exclusionary rule should apply because law enforcement's "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant [s]he issues must be objectively reasonable, and it is clear in this case the officer has no reasonable grounds for believing that the warrant was properly issued." [*Id.* at 9.]

Mr. Allen's focus on whether Officer Cummings should have known that his affidavit does not establish probable cause overlooks the fact that, at the time Officer Cummings sought and received judicial authorization to use the GPS Unit, the GPS tracking of a vehicle was considered to be a Fourth Amendment search. *See Brown*, 2014 WL 821278, at *1. As the Government rightly argues, [dkt. 121 at 9-10], and the Seventh Circuit made clear in *Brown*, "[b]efore *Jones*, 'binding appellate precedent' in this circuit had established that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment." *Brown*, 2014 WL 821278, at *1 (citing *Garcia*, 474 F.3d 994; *Cuevas-Perez*, 640 F.3d 272). Therefore, a lack of good-faith cannot be demonstrated by the alleged obvious lack of probable cause, as Officer Cummings had no reason to believe that probable cause was necessary. Relatedly, this is likely the reason why the State GPS Authorization was not a search war-

rant and why no probable cause determination was made by the issuing judge.[8]  [*See* dkt. 113-2 at 1-2.]

Despite the fact that neither probable cause nor a warrant was necessary, Officer Cummings took the step of receiving judicial authorization for his conduct.  Officer Cummings' decision to do so is what makes this case analogous to this Court's recent decision in *Taylor*.  Indeed, the Court's reasoning in *Taylor* is equally applicable here and is therefore included in relevant part:

> Even if a specifically recognized good-faith exception does not apply, such as that recognized in *Davis* or *Leon*, suppression is not automatically warranted.  The Court still must independently assess in each given case whether the exclusionary rule should apply.  This is because the Supreme Court has made clear that any assessment of whether the exclusionary rule applies always requires a "rigorous weighing of its costs and deterrence benefits."  *Davis*, 131 S. Ct. at 2427; *see Guzman v. City of Chicago*, 565 F.3d 393, 398 (7th Cir. 2009) ("[T]he benefits of exclusion must outweigh the costs.").  Suppression imposes a "heavy toll" on "both the judicial system and society at large," as it "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.*; *see Illinois v. Krull*, 480 U.S. 340, 352-53 (1987) (holding that the "incremental deterren[ce]" gained by suppression "must be weighed against the 'substantial social costs exacted by the exclusionary rule'") (quoting *Leon*, 468 U.S. at 907).  And "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue."  *Davis*, 131 S. Ct. at 2427 (alteration in original) (quoting *Herring v. United States*, 555 U.S. 129, 143 (2009)); *see United States v. Williams*, 731 F.3d 678, 689-90 (7th Cir. 2013) ("[C]ourts should not exclude evidence unless the actions in question were 'sufficiently deliberate that exclusion can meaningfully deter' similar actions in the future, and that the actions were 'sufficiently culpable that such deterrence is worth the price paid by the judicial system.'") (quoting *Herring*, 555 U.S. at 144).  Specifically, the exclusionary rule is only meant to deter future conduct of law enforcement that is "deliberate, reckless, or grossly negligent."  *Herring*, 555 U.S. at 144.  Therefore, any time the "police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way."  *Davis*, 131 S. Ct. at 2427-28 (citations and quotation marks omitted).

---

[8] The Court notes that the Federal GPS Authorization does include a finding of probable cause. But because Mr. Allen does not delve into this distinction, neither will the Court.

Here, the Court cannot conclude that law enforcement's conduct was anything but objectively reasonable; it certainly was not reckless or grossly negligent. Instead of unilaterally deciding that they could attach the GPS Unit to Mr. Taylor's car, law enforcement sought *and received* judicial authorization to use the GPS Unit . . . . Although the Government conceded that the authorization was not the equivalent of a search warrant, it was nonetheless permission from a "detached and neutral magistrate" to use the GPS Unit in the manner they did, *Leon*, 468 U.S. at 900. The fact that the judicial authorization on which law enforcement relied did not, as in *Leon*, take the form of a search warrant, does not undermine the rationale underlying *Leon*—namely, that the exclusionary rule "should not be applied" when law enforcement "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918-19. When law enforcement seek and obtain judicial approval for the precise conduct in which they seek to engage, their belief that they did not violate the Fourth Amendment is an objectively reasonable one. True, law enforcement could have obtained a search warrant before using the GPS Unit. But, again, the Court cannot conclude that their decision otherwise was anything but reasonable in light of the judicial authorization they received to use the device without a search warrant.

In sum, the heavy costs of suppression do not outweigh its benefits in this case. When, as here, law enforcement officers seek judicial authorization for their actions—a step that courts should not discourage—and they receive such authorization, it is objectively reasonable for them to believe that the authorized actions do "not violate the Fourth Amendment." *Id.* at 918. Actions taken pursuant to judicial authorization certainly do not evince the "disdain for constitutional requirements" the exclusionary rule seeks to deter. *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2010) (quoting *United States v. Cazares-Olivas*, 515 F.3d 726, 728 (7th Cir. 2008)). And if, as here, suppression would not result in the appreciable deterrence of the type of law enforcement conduct the exclusionary rule is meant to deter—*i.e.*, that which is culpable—there is insufficient deterrence value to outweigh the costs of suppression. Therefore, application of the exclusionary rule is not appropriate. *See Davis*, 131 S. Ct. at 2427 ("Real deterrence value is a 'necessary condition for exclusion' . . . .") (quoting *Hudson v. Michigan*, 547 U.S. 586, 596 (2006)).

*Taylor*, 2013 WL 5817246, at *6-7 (emphasis in original) (some citations altered or omitted) (footnote omitted).

The same reasoning applies here. Law enforcement sought and received judicial authorization to attach and use the GPS Unit on Ms. Kaczmarek's vehicle. As in *Taylor*, when law en-

forcement seeks and obtains judicial approval[9] for the precise conduct in which they seek to engage, their belief that they did not violate the Fourth Amendment is an objectively reasonable one. Their conduct is certainly not that which is "so deliberate that the exclusionary rule should apply." *Williams*, 731 F.3d at 689 (applying the exclusionary rule when a police officer's conduct "was both deliberate and culpable"). Accordingly, for this reason as well, application of the exclusionary rule is not appropriate in this case, and Mr. Allen's Motion to Suppress must be denied.

3. *Mr. Allen's Other Arguments in Support of the Application of the Exclusionary Rule are Unpersuasive*

Mr. Allen makes two additional perfunctory arguments regarding why the good-faith exception to the exclusionary rule is inapplicable. The Court briefly addresses each in turn, finding neither of them persuasive.

First, Mr. Allen contends that "any claim of good faith" is undermined by the fact that law enforcement failed to give Ms. Kaczmarek notice of the GPS monitoring as required by the Federal Rule of Criminal Procedure 41 and the Federal GPS Authorization. [Dkt. 115 at 8.] The Government does not dispute that it failed to adequately provide Ms. Kaczmarek with notice of the GPS monitoring as required by Rule 41 and the Federal GPS Authorization. [Dkt. 121 at 12 n.5.] It further acknowledges that law enforcement "should have sought judicial authorization for delayed notice under Rule 41," but contends that their failure to do so does not evince bad faith as the investigation "continued for over a year beyond the termination of [the Federal GPS

---

[9] As the Court noted in *Taylor*, "[i]t is irrelevant to the suppression inquiry whether that judicial authorization was ultimately proper, as the purpose of the exclusionary rule is to deter wrongful law enforcement conduct, not errors made by the judiciary." *Taylor*, 2013 WL 5817246, at *10 n.8 (citing *Arizona v. Evans*, 514 U.S. 1, 14-16 (2009); *Leon*, 468 U.S. at 916).

Authorization].”  [*Id.*]  In any event, says the Government, “a violation of the Rule 41 notice requirement does not automatically trigger suppression.”  [*Id.*]

The Government is correct that violations of Rule 41 do not warrant suppression unless there “is a showing of prejudice, or an intentional and deliberate disregard of the rule.”  *United States v. Kelly*, 14 F.3d 1169, 1173 (7th Cir. 1994); *see also United States v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987) (“[F]oibles in the administration of Rule 41 are not grounds for exclusion.”).  Mr. Allen has not even attempted to make either showing.  Nor could law enforcement’s failure to provide Ms. Kaczmarek after-the-fact notice of the GPS monitoring evince a lack of a good-faith that their conduct was legal at the time of the search occurred.  In other words, law enforcement’s failure to provide the required notice to Ms. Kaczmarek that the search occurred does not tend to show that the officers could not have relied on then-binding appellate precedent or judicial authorization in believing that the search was legal in the first place.

Second, Mr. Allen suggests that the State GPS Authorization could not have been relied on because Officer Cummings forum shopped the state court request for authorization to use the GPS Unit.  [Dkt. 115 at 5.]  According to Mr. Allen, this forum shopping is evidenced by the fact that, “rather than seek authorization from a Monroe county judge in Bloomington, . . . [he] travelled forty miles north of the target vehicle in order to present his affidavit to a Morgan county judge.”  [Dkt. 115 at 5.]  But Mr. Allen again cites no authority supporting that such conduct undermines either of the above two iterations of the good-faith exception the Court finds applicable in this case.  Moreover, the Government rightly points out that Officer Cummings’ affidavit states that he is “involved in a marijuana indoor grow investigation involving several grow locations believed to be in Monroe County and Southern Morgan County.”  [Dkt 113-1 at 1.]  Therefore, there is nothing improper to be inferred from Officer Cummings seeking judicial authoriza-

tion in one of the two counties in which the alleged conduct occurred.[10]  Accordingly, neither of

Mr. Allen's additional arguments undermine the application of the good-faith exception.

### C.    Mr. Allen is Not Entitled to an Evidentiary Hearing or a *Franks* Hearing

#### 1.    *Mr. Allen is Not Entitled to an Evidentiary Hearing*

Mr. Allen makes a one-sentence request for the Court to hold an evidentiary hearing "to

determine what extent law enforcement violated those rights ostensibly guaranteed to all people

under the Constitution."  [Dkt. 126 at 6.]  The Court is not required to hold an evidentiary hear-

ing on a motion to suppress "as a matter of course."  *United States v. McGaughy*, 485 F.3d 965,

969 (7th Cir. 2007).  A hearing is only required "when the allegations and moving papers are

sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial

claim is presented and that there are disputed issues of material fact which will affect the out-

come of the motion."  *Id.* (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)).

To be entitled to a hearing, "the onus [is] on [the] defendant . . . to specifically allege[] a *definite

disputed factual issue*, and to demonstrate its materiality."  *Id.* (emphasis and third alteration in

original) (citation and quotation marks omitted).

Mr. Allen falls well short of his burden to establish that he is entitled to an evidentiary

hearing.  He only makes a generalized one-sentence request that the Court hold one, and thus

---

[10] Without supporting evidence or authority, Mr. Allen also makes the one-sentence assertion that "[t]he Morgan county judge failed to review the affidavit with a critical eye, strongly suggesting that [Officer] Cummings deliberately shopped the application to a 'rubber stamp' judge." [Dkt. 115 at 5.]  It is true that reliance on judicial authorization would not be in good-faith if the law enforcement officer in question "had reason to believe that the magistrate improperly issued the warrant without meaningfully and critically evaluating the evidence."  *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002).  But the mere assertion that a judge failed to meaningfully evaluate the evidence does not make it so and is insufficient to advance Mr. Allen's position.  *See id.* (denying a similar argument because the defendant "failed to submit a shred of evidence (such as an affidavit, police record, or deposition transcript) to substantiate his bold and speculative accusation that the state magistrate" did not read or review the affidavit).

does not set forth "specific[] alleg[ations] [of] a *definite disputed factual issue*." *Id.* (emphasis in original). Accordingly, his request for a hearing on his motion is denied.

### 2. *Mr. Allen is Not Entitled to a* Franks *Hearing*

Mr. Allen also requested a *Franks* hearing, the purpose of which is to ascertain whether law enforcement made false or misleading statements in order to obtain a search warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). In support of this request, he argues that both affidavits in support of the State GPS Authorization and Federal GPS Authorization were misleading. [Dkt. 115 at 7.] Specifically, he contends that the "affidavits' characterization of the source of the information as an 'unidentified informant' was misleading in that it obfuscated the fact that the source was completely anonymous." [*Id.*] "That important detail," says Mr. Allen, "was withheld from both judges" and "alone creates a substantial showing that [Officer] Cummings and Special Agent Cline acted with deliberate or reckless disregard for the truth." [*Id.*]

The Government responds that a *Franks* hearing should not be held for three reasons. [Dkt. 121 at 13.] First, the Government contends that "[Mr.] Allen's failure to offer evidence cannot satisfy the necessary showing to trigger a hearing under *Franks*." [*Id.*] Second, the Government argues that "'unidentified is a recognized synonym for 'anonymous,'" thus there was nothing misleading about law enforcement's use of the term "unidentified informant." [*Id.*] Third, the Government maintains that even if law enforcement should have used the term "anonymous," the affidavits make clear that the officer corroborated the tips it received from the unidentified informants, and therefore "[t]he judges could reasonably conclude that the information from an anonymous (or unidentified) informant was reliable on the basis of independent corroboration." [*Id.*]

The Supreme Court has held that "[t]here is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. The Seventh Circuit has interpreted *Franks* to require a defendant to make a "substantial preliminary showing" that "(1) the affidavit contained a false material statement; (2) the affiant made the false statement intentionally, or with reckless disregard to the truth; and (3) the false statement is necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001); *see United States v. Smith*, 576 F.3d 762, 765 (7th Cir. 2009) (same).

The Government is correct that Mr. Allen's failure to offer proof in support of his request for a *Franks* hearing precludes him from being entitled to one. *See Franks*, 438 U.S. at 171; *cf. United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) ("If [the defendant] believes that [the police officer] lied, he must support that allegation with an offer of proof . . . ."). But even if Mr. Allen had offered proof to support his request, he still did not attempt to meet the three requisite elements of the substantial preliminary showing. Most prominent is his failure to show that the affidavit contained a false material statement. He attempts to meet this requirement by arguing that law enforcement's reference to an "unidentified informant" somehow obscures the fact that the informant was anonymous. This argument is a non-starter; by definition, a person that is not identified is anonymous. *See The American Heritage Dictionary* 54 (1978) (defining "anonymous" as "having an unknown or unacknowledged name" or "having an unknown or withheld authorship or agency"). For either of these reasons, Mr. Allen is not entitled to a *Franks* hearing.

**III.**

**CONCLUSION**

For the reasons explained, the Court **DENIES** Mr. Allen's Motion to Suppress. [Dkt. 114.]

04/07/2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**